```
                    United States District Court
                      District of Massachusetts
```

|                                  |   |                  |
|----------------------------------|---|------------------|
| William Holzman,                 | ) |                  |
|                                  | ) |                  |
|     Plaintiff, | ) |                  |
|                                  | ) |                  |
|     v.       | ) |                  |
|                                  | ) | Civil Action No. |
| The Hartford Life and Accident   | ) | 17-11436-NMG     |
| Insurance Co.,                   | ) |                  |
|                                  | ) |                  |
|     Defendant. | ) |                  |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a dispute over the decision by the Hartford Life and Accident Insurance Company ("the Hartford" or "defendant") to deny William Holzman ("Holzman" or "plaintiff") long-term disability ("LTD") benefits under the Employee Retirement Income Security Act ("ERISA").

I. **Background**

Holzman was employed at Anderson Corporation ("Anderson") and the Hartford issued a group disability insurance policy ("the Group Policy") to Anderson that is governed by ERISA. Under the Group Policy, a participant is entitled to LTD benefits when the Hartford determines that the employee is disabled and eligible to receive benefits.

The term "disabled" is defined as when the employee cannot perform one or more of his essential duties and the employee's monthly earnings are less than 80% of his indexed pre-disability earnings. LTD benefits are also limited by the Pre-Existing Condition provision which provides that

> [N]o benefit will be payable under The [Group] Policy for any Disability that is due to, contributed to by, or results from a Pre-Existing Condition.

A pre-existing condition is defined as

> any accidental bodily injury, sickness, mental illness, pregnancy, or episode of substance abuse

for which the individual receives "Medical Care" during the 90-day period that ends the day before the effective date of coverage ("the Look-Back Period"). Medical Care is received by a patient when a physician or health care provider is consulted or gives medical advice, or recommends, prescribes or provides treatment. Treatment includes, but is not limited to, medical examinations, tests, attendance or observation by a physician, and use of drugs, medicines, services, supplies or equipment by the patient. The Pre-Existing Condition provision does not apply if the disability occurs after the last day of the Look-Back Period or after the last day of 365 consecutive days during which the employee has been continuously insured under the Group Policy.

Holzman became insured under the Group Policy on June 10, 2016, with a Look-Back Period of March 12, 2016, to June 9, 2016.  Prior to the Look-Back Period, on March 7, 2016, Dr. Eric Weber ("Dr. Weber") determined that Holzman had a facial nerve disorder or perhaps Bell's palsy.  He prescribed medicine for Holzman's condition but noted the cause of his symptoms were unknown at the time.

On May 19, 2016, Dr. Weber examined Holzman again and observed that the facial paralysis had increased.  He recommended additional laboratory tests and assured the plaintiff that his symptoms would improve.  At that point, Dr. Weber informed the plaintiff that his Lyme disease test was negative and concluded, again, that Holzman had Bell's palsy. On June 29, 2016, a few weeks after the end of the Look-Back Period, Dr. Weber observed that Holzman had a small growth on his jaw and referred him to another doctor.  A few weeks later, Dr. Richard Wein ("Dr. Wein") counseled Holzman on his likely prognosis of salivary duct cancer.

Holzman stopped working on July 29, 2016, when he had surgery to remove the mass in his jaw.  At his post-surgery appointment, Dr. Wein confirmed plaintiff's cancer diagnosis and Holzman sought further cancer treatment thereafter.  He filed his claim for LTD benefits under the Group policy in January, 2017.

In April, 2017, the Hartford informed Holzman that his LTD claim was subject to the Pre-Existing Condition provision and that he was exempt from coverage because he received Medical Care during the Look-Back Period. Holzman appealed that decision in May, 2017. The Hartford Appeals Specialist referred the appeal to an independent, board-certified oncologist, Dr. Brian Samuels ("Dr. Samuels"), who performed a review of Mr. Holzman's medical records and treatment history.

Dr. Samuels concluded that Holzman had symptoms related to his salivary duct cancer before June 10, 2016, but that 1) the symptoms did not result in the cancer and 2) because no diagnosis of cancer was made prior to June 29, 2016, there was no Medical Care or treatment prior to June 10, 2016, related to or resulting in the cancer. He also determined that Dr. Weber's treatment notes during the Look-Back Period showed that the symptoms were related to the later diagnosis of cancer, although it was not known to be cancer at the time. In June, 2017, the Hartford notified Holzman that it affirmed its prior decision to deny his LTD benefits. Following the exhaustion of administrative remedies under ERISA, the plaintiff filed suit in federal court.

## II. Legal Analysis

### A. Legal Standard

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine

issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Motion for Summary Judgment**

**1. Contra Proferentem**

The defendant argues that courts must apply the deferential, arbitrary and capricious standard of review when reviewing decisions made by plan administrators under ERISA and that the common law doctrine of contra proferentem (wherein courts construe ambiguous terms against the insurer) does not apply when the Group Policy grants the administrator discretion. In support of that proposition, the defendant submits (and plaintiff does not contest) that the Group Policy gives the Hartford full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy. That same discretionary authority is confirmed in the Certificate of Insurance.

The plaintiff rejoins that contra proferentem applies, noting that ERISA imposes a requirement on insurers to communicate accurately with plan participants such that they are aware of their rights and obligations. Specifically, he avers that the Hartford failed to define pre-existing condition adequately or to specify what constitutes "nonspecific symptomology". He further contends that he became aware of his

cancer diagnosis only after the Look-Back Period and that the ambiguity in the Group Policy should be resolved in his favor as the insured.

This Court concludes that contra proferentem does not apply because, while Holzman disputes the Hartford's interpretation of material terms in the Policy, he agrees that the Group Policy grants full discretionary authority to the Hartford to determine eligibility for benefits and to construe and interpret all terms and provision in the Policy. See Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 93-94 (1st Cir. 2008) (finding that when plan administrators have discretionary authority to construe the plan, they determine the intended meaning of the terms and courts cannot apply contra proferentem). The Court turns next to the applicable standard of review.

### 2. Deferential, Arbitrary and Capricious Standard of Review

If the policy provides the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the administrator is entitled to the deferential, arbitrary and capricious standard of review. Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (2002)).

Defendants aver that Holzman's disability was due to, contributed to by or resulted from a sickness for which he

cancer diagnosis only after the Look-Back Period and that the ambiguity in the Group Policy should be resolved in his favor as the insured.

This Court concludes that contra proferentem does not apply because, while Holzman disputes the Hartford's interpretation of material terms in the Policy, he agrees that the Group Policy grants full discretionary authority to the Hartford to determine eligibility for benefits and to construe and interpret all terms and provision in the Policy. See Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 93-94 (1st Cir. 2008) (finding that when plan administrators have discretionary authority to construe the plan, they determine the intended meaning of the terms and courts cannot apply contra proferentem). The Court turns next to the applicable standard of review.

### 2. Deferential, Arbitrary and Capricious Standard of Review

If the policy provides the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the administrator is entitled to the deferential, arbitrary and capricious standard of review. Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (2002)).

Defendants aver that Holzman's disability was due to, contributed to by or resulted from a sickness for which he

received Medical Care during the Look-Back Period, and thus the Hartford's decision to deny LTD benefits was rational and in compliance with the deferential standard of review.

The plaintiff protests that the Hartford's denial of his benefits was a clear abuse of discretion in that it violated settled law. In relation to that claim, the parties discuss two First Circuit Court of Appeals decisions which the Court now peruses.

### a. Hughes v. Boston Mutual Life Insurance Company

In Hughes, the administrator did not have discretionary authority to interpret the terms of the ERISA-based insurance policy and thus the Court applied contra proferentem, not deference, when reviewing the decision to deny benefits. Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 267-68 (1st Cir. 1994). The parties offered differing but reasonable interpretations of the ambiguous pre-existing condition provision of the policy. Id. at 269. The insurer alleged that treatment for a condition includes treatment of any symptom in which hindsight appears to be a manifestation of the later, disabling condition. Id. at 269. The claimant, in contrast, argued that the provision requires some awareness on the part of the physician or the insured that the insured is receiving treatment for the disabling condition itself. Id. The Court found that both interpretations were reasonable but that,

because it was compelled to apply contra proferentem, it would adopt the claimant's interpretation. Id.

The Hartford distinguishes Hughes on the grounds that, unlike the administrator in Hughes, the Hartford has discretion to interpret the terms of the Group Policy and thus contra proferentem does not apply. As such, the Court need not go beyond the deference analysis.

Moreover, defendant marks that the First Circuit endorsed the insurer's interpretation of the ambiguous pre-existing condition provision as reasonable. The Hartford proffers the same interpretation of its analogous pre-existing condition provision that Holzman received Medical Care for a sickness (facial paralysis) which was a manifestation of his latent cancer (the disabling condition). Furthermore, the Hartford argues that, unlike the fact pattern in Hughes where the insured had generalized, nonspecific symptoms, Holzman exhibited specific facial paralysis that was directly caused by the disabling condition. Cf. Id. at 266 (finding that the disabling condition of multiple sclerosis progresses slowly and cannot be diagnosed with certainty even during the life of the patient). Thus, the Hartford submits that its decision was rational under the deferential, arbitrary and capricious standard of review.

Holzman, naturally, prescribes to the second interpretation that the First Circuit proffered in Hughes (requiring some

awareness on the part of the physician or the insured that the insured is receiving treatment for the disabling condition itself) as evidence of the Hartford's unreasonable denial of LTD benefits. He argues that consistent with the second, reasonable interpretation in Hughes, his doctor had no reason to believe that he had anything but Bell's palsy and that the cancer was rare, aggressive and unforeseeable. Thus, the Hartford's decision ought not prevail under a deferential review standard.

The Court agrees that Hughes is distinguishable because contra proferentem does not apply in this case and the Hartford's interpretation of the provision that treatment of a symptom that in hindsight is a precursor for the disabling condition satisfies deferential review. Although the Court could conclude its analysis here, for the sake of completeness it will address the other relevant First Circuit decision.

### b. Glista v. Unum Life Insurance Company of America

In Glista, the claimant was treated for radiculopathy during the Look-Back Period but was not diagnosed with primary lateral sclerosis ("PLS"), the disabling condition, until after the Look-Back Period. Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 127-28 (1st Cir. 2004). Although the treating doctor noted that the patient showed signs of a symptom inconsistent with radiculopathy during the Look-Back Period, he did not notify the patient of that symptom (which happened to be a

precursor of the PLS disability), nor did he investigate the cause of the symptom. Id.  Although the administrator in Glista had discretionary authority over the plan, the Court held that the denial of LTD benefits was unreasonable because there was nothing in the record that showed a clear, direct relationship between the patient's symptoms and PLS during the Look-Back Period. Id. at 128.  The policy provided that there must be a clear and direct relationship between the sickness or injury treated and the cause of the insured's disability. Id.

The Hartford argues that unlike the claimant in Glista, who was treated for symptoms that were clearly unrelated to the ultimate, long-term diagnosis of PLS, Holzman received Medical Care during the subject period for his facial paralysis which was a specific manifestation of his salivary duct cancer.

Holzman responds that, consistent with Glista, a doctor cannot provide treatment for a condition of which neither the patient nor the doctor was aware.  Specifically, Holzman submits that a later diagnosis of cancer, in retrospect, is immaterial to whether medical care providers who treated him for Bell's Palsy during the Look-Back Period suspected that cancer was the cause of his facial paralysis.

From a policy perspective, this Court agrees with the jurisprudence that pre-existing condition provisions that include "any sickness" during the Look-Back Period (as opposed

to an illness that is directly related to the disabling condition) create a perverse incentive for insurers to deny coverage where any treatment is sought. See Lawson ex rel. Lawson v. Fortis Ins. Co., 301 F.3d 159, 166 (3d Cir. 2002) (considering treatment for symptoms of a not-yet-diagnosed condition as equivalent to treatment of the underlying condition ultimately diagnosed might open the door for insurance companies to deny coverage for any condition the symptoms of which were treated during the exclusionary period); see also Estate of Ermenc by Ermenc v. Am. Family Mut. Ins. Co., 585 N.W.2d 679, 682 (Ct. App. 1998) (permitting backward-looking reinterpretations of symptoms to support denials of claims would greatly expand the definition of pre-existing condition as to make that term meaningless).

As defendant asserts, however, here the Group Policy provides that the Pre-Existing Condition provision applies when the claimant receives treatment for "any sickness" during the Look-Back Period which contributes to or results in a disability. As such, the pre-existing condition need not be the same condition as the disabling condition and thus the question of whether the physician accurately diagnosed or suspected the disabling condition during the Look-Back Period is irrelevant.

Accordingly, because this Court concludes that the Hartford proffered a reasonable interpretation of the Group Policy and

the terms of the Policy clearly state that treatment of any sickness during the Look-Back Period precludes LTD coverage, defendant's motion for summary judgment will be allowed.

### 3. Conflict of Interest

Finally, the Hartford acknowledges that it is both the decision maker and the payor of claims, which creates a potential conflict of interest. The defendant submits that such a conflict does not alter the deferential standard of review but is a factor to be considered in determining whether its decision was an abuse of discretion. In support of its claim that the conflict is immaterial here, the Hartford submits that it took steps to promote accuracy in its decision, gave a thorough appellate review of the initial determination and consulted an independent board-certified oncologist in its appellate review. It further contends that it took steps to wall off its claim adjusters from financial considerations and that its payment of Holzman's short-term disability benefits for the maximum period is further evidence of unbiased interest.

When evaluating abuse of discretion, courts consider several factors, including a structural conflict of interest. Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 8 (1st Cir. 2009) (quoting Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)). Courts have also held that a structural conflict will be more important where circumstances suggest that the

conflict likely affected the benefits decision. Id.  It is less important, however, when the administrator takes steps to reduce potential bias and to promote accuracy. Id.  Moreover, the plaintiff bears the burden of showing a conflict of interest. Cusson v. Liberty Life Assur. Co. of Boston, 592 F.3d 215, 225 (1st Cir. 2010), abrogated by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan, 136 S. Ct. 651 (2016).

This Court concludes that the conflict of interest is minimal here because 1) the Hartford has proffered evidence of its unbiased interest and 2) Holzman has not raised this issue, despite having the burden of doing so.  As such, the standard of review remains deferential and defendant is entitled to summary judgment.

**ORDER**

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 18) is **ALLOWED**.


**So ordered.**

_/s/ Nathaniel M. Gorton____  
Nathaniel M. Gorton  
United States District Judge

Dated January 14, 2019